IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE PRINCE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15CV634-WKW |
| | ) | |
| THE STATE OF ALABAMA, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Willie Prince, Jr., proceeding *pro se*, brings this action against the State of Alabama seeking reparations for injuries allegedly arising from the enslavement of his ancestors.  The presiding district judge has referred this matter to the undersigned magistrate judge, pursuant to 28 U.S.C. § 636, for all pretrial proceedings and entry of any orders or recommendations as may be appropriate. (Doc. # 2). This action is presently before the court on the motion to dismiss filed by the State of Alabama on October 9, 2015. (Doc. # 7).  Upon consideration of the motion and plaintiff's response in opposition (Doc. # 10), the court concludes that the motion to dismiss is due to be granted.

**BACKGROUND**

Plaintiff, a descendant of Alabama slaves, alleges that "[t]he state of Alabama, under the leadership of, Jefferson Davis, and the Confederacy, in the year of 1861, March, conspired to place [plaintiff's] ancestors under perpetual slavery[,]" and that the defendant is liable to him for any injury that it caused or sanctioned (Complaint, pp. 2, 3).  He seeks

compensation for the "work performed under forced, unlawful, servitude in the state of Alabama" by his ancestors, and for injury caused by the "unconstitutional names" – "such as Black, Negro, and Colored" – that were "purposely placed upon [his] ancestors to hide and change, the descent nature of who they were[,]" while they were "under the oppression of the Confederacy[.]" (Complaint, pp. 1-2).  He further complains of "the attaching of Sir Names, of slave holders, upon [his] ancestors[,]" including his own surname of Prince, which was "passed down to [him] under the document titled 'Birth Certificate'" from his "second Grandfather, John Prince, born in 1875, ten years after the Emancipation Proclamation, by the State of Alabama." (Id., p. 2). Plaintiff alleges that slave holders, and the Confederacy, promoted their own prosperity at the expense of his ancestors. (Id.). Plaintiff seeks a judgment against the State of Alabama awarding him fifty million dollars in damages, twenty-five thousand acres of land, and enjoining the State of Alabama (and the United States) to recognize his "true identity."

## DISCUSSION

In its motion to dismiss, the State of Alabama does not specifically analyze – or even refer to – any of plaintiff's allegations. (See Doc. # 7). Instead, it contends, in general terms, that (1) plaintiff's complaint fails to state a claim upon which relief may be granted (id., ¶ 1); (2) this court lacks jurisdiction to hear plaintiff's claims (id., ¶ 2); (3) the State of Alabama enjoys absolute, sovereign immunity under the Alabama constitution "regarding the state court causes of action" (id., ¶¶ 3-16); and (4) it "is entitled to immunity for any federal

claims alleged and this Court lacks jurisdiction over these claims" under the Eleventh Amendment (<u>id</u>, ¶¶ 17-18). Defendant seeks dismissal of plaintiff's complaint "with prejudice." (<u>Id</u>., p. 5).[1]

### Article III Jurisdiction

Defendant contends that "[t]his court lacks jurisdiction to hear the Plaintiff's claims." (Complaint, ¶ 2). It raises no express contention regarding this court's Article III jurisdiction but, instead, argues only that its sovereign immunity under the state constitution deprives this court of subject matter jurisdiction (<u>id</u>., ¶¶ 9, 16), as does the Eleventh Amendment to the U.S. Constitution (<u>id</u>., ¶¶ 17-18). Before the court may reach defendant's immunity contentions, it must be satisfied that plaintiff's complaint presents a "case or controversy" that Article III empowers this court to decide. <u>See</u> <u>Calderon v. Ashmus</u>, 523 U.S. 740, 745 (1998) ("We granted certiorari on both the Eleventh Amendment and the First Amendment issues, but in keeping with our precedents, have decided that we must first address whether this action for a declaratory judgment is the sort of 'Article III' 'case or controversy' to which federal courts are limited.") (citations omitted); <u>id</u>. at 745 n. 2 ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial

---

[1] Defendant moves for an order dismissing plaintiff's complaint "pursuant to Rule 12(f) of the Federal Rules of Civil Procedure." (Doc. # 7, p. 1). The cited subsection of Rule 12 does not address motions to dismiss; it permits the court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Defendant points to no such matter in the complaint. To the extent that the State of Alabama contends that this court lacks jurisdiction to proceed, the court has considered the motion under Rule 12(b)(1). The court does not reach the defendant's single-sentence argument that plaintiff "has failed to state a claim upon which relief may be granted" (Doc. # 7, ¶ 1), a contention that implicates Rule 12(b)(6).

3

power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III."). In view of the independent obligation to assess its own jurisdiction, the court addresses whether the plaintiff has standing to prosecute his claims – an issue clearly presented by his allegations and demands for relief – even in the absence of argument on this threshold issue from the defendant.  Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("Under [our adversarial] system, courts are generally limited to addressing the claims and arguments advanced by the parties.  Courts do not usually raise claims or arguments on their own.  But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citations omitted); See Bischoff v. Osceola County, Florida, 222 F.3d 874, 877-82 (11th Cir. 2000)("As the Supreme Court made clear in United States v. Hays, 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), '[t]he question of standing is not subject to waiver ... . "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.""").[2]

Plaintiff's allegations of fact – accepted as true, and construed liberally[3] and in the

_____

[2]  Because the defendant failed to raise standing, plaintiff was not on notice of a need to address it; however, plaintiff may do so by objection to this recommendation.

[3]  See Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014) ("We hold the allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers. Accordingly, we construe Campbell's pleadings liberally.") (citing Haines v. Kerner, 404 U.S. 519,

light most favorable to the plaintiff – do not demonstrate that plaintiff has standing to pursue all of his claims for relief.[4]

> It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of ... . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

United States v. Hays, 515 U.S. 737 (1995)(citations omitted).[5] In short, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984).

To the extent that plaintiff seeks relief for the "inferior names of Negro, Black, Colored, and the Sir names ... abuses, and mistreatments *that were put upon [his] ancestors by the state of Alabama*" (Complaint, p. 3) (emphasis added), including the fact that they were never "compensated for the work performed under forced, unlawful, servitude in the state of Alabama" (id., p. 2), plaintiff's allegations fail to demonstrate that he has suffered

---

520 (1972)).

[4] This court resolves the issue of standing on the basis of plaintiff's pleadings and the law, without resolving disputed issues of fact. Thus, no evidentiary hearing is required. Cf. Bischoff, 222 F.3d at 879-882 (evidentiary hearing on issue of standing is required where the court must decide disputed factual questions or make credibility findings).

[5] "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)(citations omitted).

an injury in fact as required for purposes of constitutional standing.  With the sole exception of his own surname – which plaintiff alleges to be objectionable as that of a former slaveholder, "attach[ed] ... upon [his] ancestors" and "passed down to [plaintiff]" by the State of Alabama by way of his birth certificate – plaintiff does not allege facts suggesting he has himself suffered an injury as a result of the wrongs committed against his ancestors a century and a half ago, "[w]hile under the oppression of the Confederacy[.]" (Complaint, p. 2).  See In re African-American Slave Descendants Litigation, 471 F.3d 754, 759 (7th Cir. 2006) ("[T]here is a fatal disconnect between the victims and the plaintiffs. When a person is wronged he can seek redress, and if he wins, his descendants may benefit, but the wrong to the ancestor is not a wrong to the descendants."); id. at 760 ("[H]ow could the wages that the ancestor would have earned as a free laborer be shown to have influenced the wealth of his remote descendant? Economists actually study such issues ..., but these are studies of aggregate effects, not of the effects of particular acts, affecting particular individuals, on the wealth of specific remote descendants. There is no way to determine that a given black American today is worse off by a specific, calculatable sum of money (or monetized emotional harm) as a result of the conduct of one or more of the defendants.")(citations omitted); In re African-American Slave Descendants Litigation, 304 F. Supp.2d 1027 , 1048 (N.D. Ill. 2004) ("[P]laintiffs' claim to the economic wealth of their ancestors' labor is conjectural. While most would like to assume that they will be the beneficiaries of their ancestors' wealth upon their demise, this is a mere assumption.  Plaintiffs can only speculate

that their ancestors' estates would have been passed on to them, and cannot say that they would have inherited their ancestors' lost pay. This is insufficient to show a personal injury to Plaintiffs."); Hamilton v. United States, 2012 WL 760691, * 6 (E.D. Tex. Feb. 9, 2012) ("[P]laintiff's injuries are sheer conjecture and he wholly fails to connect any personal injury he has suffered at the hands of the defendants. ... Plaintiff seeks relief based on the alleged effects of enslavement, segregation and discrimination over history. Even taking all of Hamilton's statements as true, the direct victims of slavery and segregation are his ancestors, not himself."), *Report and Recommendation adopted*, 2012 WL 760877 (Mar. 8, 2012).

In his response in opposition to the motion to dismiss, plaintiff argues that "the State of Alabama imposed injuries," and that "these injuries are open and active as they have been passed from my second grandfather to me." (Doc. # 10, p. 2,¶ 1). However, as to nearly all of the wrongs that plaintiff alleges were committed against his ancestors, plaintiff's factual allegations fail to demonstrate that he has *himself* suffered an injury in fact sufficient to establish his own standing to seek relief. Thus, to the extent that plaintiff seeks relief for injury to his ancestors (or to any other descendants of his ancestors), his claims are due to be dismissed without prejudice for lack of jurisdiction.

The sole injury that plaintiff claims to have suffered personally is that he bears the surname of a slave holder, such that his "true identity" is not recognized by the State of Alabama. While plaintiff does not allege expressly that he has suffered emotional injury due to his legal surname of Prince, the existence of such injury – when the *pro se* complaint is

construed liberally and viewed in the light most favorable to the plaintiff – reasonably may be inferred from his allegations. Plaintiff alleges that this "unconstitutional" surname was "attach[ed] ... upon his ancestors"[6] while they were under the oppression of the Confederacy – with which the State of Alabama "conspired to place [his] ancestors under perpetual slavery." (Complaint, p. 2). He further alleges that the surname was passed down to him "under the document 'Birth Certificate' ... *by the State of Alabama*" from his great-grandfather, John Prince, through his grandfather and father (Cullen Prince and Willie Prince, respectively). Id. (emphasis added). A judgment in plaintiff's favor awarding him the compensatory damages he seeks would redress, at least in part, the alleged injury. Thus, the court concludes – without regard to the defendant's immunity defense, or to the merits of plaintiff's claim (including problems of proof, whether the alleged conduct violates the constitution, and whether it is barred by the statute of limitations or the intracorporate conspiracy doctrine)[7] – that plaintiff's allegations suffice, albeit minimally, to establish that

---

[6]  For purposes of the standing analysis, the court assumes that the "attach[ment]" of the surname Prince to plaintiff's ancestors was unconstitutional, as plaintiff claims. See Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) ("'[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'") (citations omitted); Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial, Inc., 919 F.2d 1517, 1520 n. 2 (11th Cir. 1990) ("For purposes of this standing analysis and to separate the standing issue from the merits of the antitrust claims, we will assume that a violation of § 1 of the Sherman Act has in fact occurred."); Roper v. Olson, 2013 WL 4529804, *3 n. 2 (M.D. Ala. Aug. 26, 2013) ("For purposes of the jurisdictional analysis, the court presumes the validity of the alleged constitutional violation.").

[7]  The court accepts plaintiff's allegations as true, on the present motion, and draws all reasonable inferences in his favor. It notes, however, that the passage of time and unavailability of witnesses might render it difficult or impossible for plaintiff to prove that the Prince surname was "attached" to plaintiff's slave ancestor by the State of Alabama (or by any slave holder with the

he has constitutional standing to assert his claim relating to his own surname, Prince. Thus, the court may resolve the immunity issues raised by the defendant without exceeding the power granted to it by Article III.

## Eleventh Amendment

---

sanction of the state) wrongfully, as opposed to by an exercise of the ancestor's own free will. As an example of the latter, Professor Alan Taylor offers the following explanations for enslaved persons' practice of adopting the surnames of slave holders in his Pulitzer Prize-winning history of slavery in Virginia:

> [S]laves wanted surnames as tokens of personal respect and markers of familial ties. Seeking equality, many slaves claimed the dominant culture's markers of respectability for themselves.
>
> By refusing to recognize the last names claimed by slaves, masters treated them as perpetual children and dependents. By obscuring their family relationships, the denial of surnames also facilitated treating every slave as a commodity without honor. In public, white men insisted on being addressed by their surnames, reserving their first names for their closest friends. When addressing a black, however, whites asserted superiority by using her or his first (or "Christian") name.
>
> . . .
>
> By claiming the master's name, mixed-race slaves sought to remember what the master meant to keep hidden: a blood tie as a daughter, son, niece, nephew, or cousin. Or by claiming the surname of a previous master, a slave could subtly challenge the legitimacy of his sale to a new master.
>
> . . .
>
> In the Chesapeake, the master sought to reserve his surname, denying the efforts by slaves to claim it. ... By claiming the master's surname, the enslaved Dick Carter asserted a humanity and manhood on a par with Charles Carter at Corotoman [Plantation]. ... No act of submission, taking a master's surname was instead as defiant as taking his pig at night.

Alan Taylor, *The Internal Enemy: Slavery and War in Virginia, 1772-1832* (New York: W.W. Norton & Co. 2013), 257-258 (footnotes omitted).

While plaintiff has constitutional standing to pursue his claim for relief for any injury he has suffered personally as a result of the allegedly unconstitutional attachment of the Prince surname to his ancestor, his claim is barred by the State of Alabama's Eleventh Amendment immunity. Under the Eleventh Amendment, a state is generally immune from lawsuits brought in federal court by private citizens. Hans v. Louisiana, 134 U.S. 1 (1890). The Eleventh Amendment bars suits directly against "the State or one of its agencies or departments ... regardless of the nature of the relief sought." (Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-101 (1984)). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). Absent the state's "unequivocally expressed" consent or waiver of its Eleventh Amendment immunity, or a valid abrogation of that immunity by Congress, a federal court may not exercise jurisdiction over a lawsuit against a state. Pennhurst, 465 U.S. at 99; Garrett, 531 U.S. at 363; Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995).

The Alabama Constitution provides that "[t]he state of Alabama shall never be made a defendant in any court of law or equity." Ala. Const., Art. I, § 14. Alabama has not consented to being sued as to any of plaintiff's claims. See Alabama v. Pugh, 438 U.S. 781, 782 (1978)("Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution[.]"); Stroud v. McIntosh, 722 F.3d 1294, 1303 (11th Cir. 2013)("Alabama retains a 'nearly

impregnable' immunity from suit, <u>Patterson v. Gladwin Corp.</u>, 835 So.2d 137, 142 (Ala. 2002), and neither the state legislature nor any other state authority can waive it, <u>Larkins v. Dep't of Mental Health & Mental Retardation</u>, 806 So.2d 358, 363 (Ala. 2001).").

Plaintiff's constitutional claim must proceed, if at all, pursuant to 42 U.S.C. § 1983. Congress did not abrogate the states' Eleventh Amendment immunity in enacting § 1983 claims. <u>Selensky v. Alabama</u>, 2015 WL 4460332, * 3 (11th Cir. Jul. 22, 2015)("Although Selensky cites no applicable federal statute that would indicate Congress' intent to abrogate Eleventh Amendment immunity, insofar as she is alleging a violation of her civil rights, she would be proceeding under 42 U.S.C. § 1983; however, 'Congress has not abrogated eleventh amendment immunity in section 1983 cases.'") (citing <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 (11th Cir. 1990)); <u>Schopler v. Bliss</u>, 903 F.2d 1373, 1379 n. 4 (11th Cir. 1990) ("Abrogation is not at issue in this case.  The Fourteenth Amendment does not by its own force override the States' Eleventh Amendment immunity, nor did Congress abrogate that immunity when it enacted 42 U.S.C. § 1983.") (citations omitted). To the extent that plaintiff's surname claim could be construed to arise under state law, the Eleventh Amendment remains a bar to suit in this court.  <u>Pennhurst</u>, 465 U.S. at 117-21.  Accordingly, plaintiff's claim against the State of Alabama relating to his surname is due to be dismissed as barred by the state's Eleventh Amendment immunity.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge

that defendant's motion to dismiss (Doc. # 7) be GRANTED, and that (1) plaintiff's claim against the State of Alabama relating to his surname be DISMISSED without prejudice as barred by the Eleventh Amendment;[8] (2) all of plaintiff's other claims be DISMISSED without prejudice for lack of jurisdiction; and (3) in the event that this recommendation is adopted, plaintiff be allowed ten days to move for leave to file an amended complaint.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the plaintiff. Plaintiff is DIRECTED to file any objections to this Recommendation on or before November 23, 2015. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; see Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir.

---

[8] See Wilger v. Department of Pensions and Security for the State of Alabama, 593 F.2d 12, 13 (5th Cir. 1979) ("We note that the court below gave no grounds for its order of dismissal and failed to specify that the dismissal was with prejudice. ... We assume that the dismissal of this action was *predicated upon the eleventh amendment*, and not based upon the merits of the Wilgers' claim (*i.e.*, *it was without prejudice*) (citations omitted) (emphases added).

1989).

DONE, this 9th day of November, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE